UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
GLADYS L.,
                         Plaintiff,

      -against-

FRANK BISIGNANO,
Commissioner of Social Security,[1]

                         Defendant.

**RULING & ORDER ON PLAINTIFF'S MOTION TO REVERSE OR REMAND AND COMMISSIONER'S MOTION TO AFFIRM DECISION OF COMMISSIONER**

24-CV-01609 (VDO)

------------------------------------------------------------------ x

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Gladys L.[2] commenced this action against the Commissioner of Social Security (the "Commissioner"), challenging the decision of the Commissioner that Plaintiff does not qualify for Supplemental Security Income ("SSI") under the Social Security Act. The parties have moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).[3]

After considering the submissions, for the reasons set forth below, the Court **denies** Plaintiff's motion and **grants** the Commissioner's motion.

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of Court is directed to substitute Frank Bisignano for Martin O'Malley in this action.

[2] Plaintiff is identified by her first name and last initial pursuant to the District's January 8, 2021, Standing Order. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan 8, 2021).

[3] *See* Mot. to Reverse Decision of the Commissioner, ECF No. 19 at 1; Mot. To Affirm Decision of the Commissioner, ECF No. 21 at 1.

I.     **BACKGROUND**

The Court assumes familiarity with Plaintiff's medical history, as summarized in both Plaintiff's Memorandum in Support of her Motion for an Order Reversing the Decision of the Commissioner and the Commissioner's Memorandum in Support of his Motion for an Order Affirming the Commissioner's Decision. The Court adopts and incorporates both statements of fact by reference.

On August 17, 2021, Plaintiff filed an application for SSI benefits under Title XVI of the Social Security Act, alleging a disability beginning on July 23, 2021.[4] The claim was denied by notice on February 10, 2022, and upon reconsideration on March 8, 2023.[5] Plaintiff filed a written request for a hearing, and on January 8, 2024, the ALJ held a telephonic hearing. Plaintiff testified at the hearing with the assistance of a Spanish interpreter. At the hearing, Plaintiff waived her right to counsel and testified without the assistance of an attorney or other representative.[6] On April 2, 2024, the ALJ issued an unfavorable decision and denied Plaintiff's claim.[7] Plaintiff then submitted a request for review of the hearing decision on April 24, 2024, which the Appeals Council denied on September 11, 2024.[8]

---

[4] Certified Administrative Record ("R.") at 17. "R." refers to the Certified Administrative Record filed at ECF No. 12. The Court cites to the pagination on the bottom right-hand corner of the record, as opposed to the CM/ECF pagination.

[5] R. 17, 240, 249.

[6] R. 17, 38–39.

[7] R. 11–31.

[8] R. 1–7, 346.

## II.  LEGAL STANDARD

"Congress has authorized federal courts to engage in limited review of final SSA disability benefit decisions." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022); *see also* 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Therefore, a court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (cleaned up). "'Substantial evidence' is evidence that amounts to 'more than a mere scintilla,' and has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre*, 758 F.3d at 149.

To be disabled, thus qualifying a claimant to benefits, a claimant must have an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(a); *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013). In determining whether a claimant is disabled, "the agency follows a five-step process detailed in 20 C.F.R. § 404.1520(a)(4)(i)–(v)[,]" as set forth below:

3

> Under the five-step process, the Commissioner determines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe physical or mental impairment, or combination of severe impairments; (3) whether the impairment (or combination) meets or equals the severity of one of the impairments specified in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"); (4) whether, based on an assessment of the claimant's residual functional capacity, the claimant can perform any of her past relevant work; and (5) whether the claimant can make an adjustment to other work given the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i)–(v).

*Schillo*, 31 F.4th at 70. The Commissioner considers whether "the combined effect of any such impairment . . . would be of sufficient severity to establish eligibility for Social Security benefits." 20 C.F.R. § 404.1523. While the finding of whether a claimant is disabled is reserved to the Social Security Administration ("SSA"), the SSA must consider an opinion provided by a claimant's treating physician and then draw its own conclusions as to whether the data in that opinion indicate disability. *Id*. at 71 (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).

## III.   DISCUSSION

In challenging the ALJ's final decision that Plaintiff was not entitled to SSI, Plaintiff raises the following arguments: (1) the ALJ did not ensure that Plaintiff was aware of her right to representation; (2) the ALJ did not fully develop the evidence of the record; (3) the ALJ misclassified Plaintiff's mental conditions as non-severe; and (4) the ALJ's RFC determination was not supported by substantial evidence.

### A.   The ALJ Informed Plaintiff of Her Right to Representation

Plaintiff asserts that the ALJ failed to ensure that Plaintiff's waiver of her right to representation at the administrative hearing was knowingly and intelligently made.[9] The

---

[9] Mem. in Supp. of Mot. to Reverse the Commissioner, ECF No. 19-1 at 21.

Commissioner, in response, contends that both the SSA and the ALJ complied with their obligation to inform Plaintiff of her right to counsel.[10] For the following reasons, the Court agrees with the Commissioner.

Claimants do not have a constitutional right to counsel at a social security disability hearing, but they do have statutory and regulatory rights to representation if they choose to obtain an attorney. *Lamay v. Comm'r. of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (citing 42 U.S.C. § 406 and 20 C.F.R. § 404.1705). Before the hearing, the Commissioner must notify the claimant in writing of "(1) her options for obtaining an attorney to represent her at the hearing; and (2) the availability of organizations which provide legal services free of charge to qualifying claimants." *Id.* (cleaned up). At the hearing itself, the ALJ is required to "ensure that the claimant is aware of [her] right [to counsel]." *Robinson v. Sec. of Health & Human Serv.*, 733 F.2d 255, 257 (2d Cir. 1984). "Claimants may waive this right, but the ALJ must ensure that any such waiver is knowing and intelligent." *Tiffany T. v. Commr. of Soc. Sec.*, No. 22-CV-00626 (TOF), 2023 WL 10949091, at *4 (D. Conn. Sept. 1, 2023), *R&R adopted by*, No. 22-CV-00626 (VAB), 2024 WL 1230256 (D. Conn. Mar. 22, 2024).

Before the hearing, Plaintiff received a letter from the SSA on August 25, 2023, explaining the hearing process and advising her of her right to counsel in both English and Spanish (the "Hearing Acknowledgement Letter").[11] Specifically, the Hearing Acknowledgement Letter states "[s]ome organizations can help you find a representative or give you free legal services. Our office has a list of organizations that can help you find a

---

[10] ECF No. 21 at 8–10.

[11] R. 279–293. Plaintiff was again informed of her right to counsel in the Notice of Hearing dated September 28, 2023. *See* R. 314, 322–23.

representative."[12] It later describes the process and states, in bold, "[u]sually, your representative may not charge a fee unless we approve it."[13] It then lists two separate organizations—the National Organization of Social Security Claimant Representatives and the National Association of Disability Representatives—who could assist Plaintiff with either finding counsel or a non-attorney to assist her at the hearing.[14] This form of notice is sufficient to comply with the two-fold requirement of notifying a claimant of her options for obtaining an attorney and the availability of organizations which provide free legal services. *See, e.g.*, *Lamay*, 562 F.3d. at 505–06. Indeed, Plaintiff has not pointed to any authority indicating otherwise. As such, the SSA met its pre-hearing requirement to inform Plaintiff of her right to counsel.

During the hearing, the ALJ met the requirement of ensuring that Plaintiff was aware of her right to counsel before waiving that right. After Plaintiff explained that she did not have an attorney or representative, the ALJ and Plaintiff engaged in the following exchange:

> ALJ: You do have a right to one. They can help ask questions. They can help get medical reports . . . We do have lists of Legal Aide, legal assistants, law offices that we can send you and we can offer you a postponement, if you want to try to find an attorney or representative, or you can go ahead today without one, whatever is more comfortable for you. Would you like to try to find an attorney or representative or would you like to go ahead today without one?
>
> Plaintiff: Go ahead today without one.[15]

---

[12] R. 285.

[13] R. 288.

[14] *Id.*

[15] R. 38–39.

Plaintiff argues that this exchange was insufficient to inform Plaintiff of the availability of low- or no-cost legal services.[16] The Court disagrees. The ALJ specifically advised Plaintiff on the benefits of proceeding with an attorney and the availability of legal aid services, legal assistants, and law offices. His advisement of the availability of legal aid services, in particular, was sufficient to inform Plaintiff of the availability of low- or no-cost legal services, as legal aid organizations are those that traditionally provide free legal services to qualifying individuals. The ALJ then offered to postpone the hearing to allow Plaintiff time to obtain an attorney, which satisfied his obligation to inform Plaintiff that she could "postpone the hearing to obtain counsel, and then proceed with the hearing at a later date." *Chmielewski v. Berryhill*, No. 18-CV-00028(WIG), 2019 WL 1487580, at *4 (D. Conn. Apr. 4, 2019). Nevertheless, Plaintiff waived her right to counsel and decided to proceed with the hearing *pro se*.[17]

Additionally, in Plaintiff's request for reconsideration, she indicated that she was represented by an attorney named "Ivan Krat," which appears to be a reference to her current counsel, Attorney Ivan Katz.[18] Thus, she was well aware of her right to counsel, as she was intermittently represented by counsel during the progress of this claim.[19] *See Avroham G. v. Dudek*, No. 21-CV-526 (SRU), 2025 WL 2785385, at *10 (D. Conn. Sept. 30, 2025) (finding that a claimant's acknowledgment that he understood his right to representation because he had counsel at a prior hearing was "additional confirmation" of the claimant's understanding of his right to counsel).

---

[16] ECF 19-1 at 18.

[17] R. 38–39.

[18] ECF 19-1 at 1, R. 244.

### B. The ALJ Sufficiently Developed the Administrative Record

Plaintiff asserts that the ALJ failed to develop the administrative record because he did not obtain function-by-function medical source opinions from Plaintiff's treating physicians, Dr. J. Grant Thompson and Dr. Melissa Pensa, and physician assistant, Rafaela Mangino.[20] In response, Commissioner submits that "there is not a gap in the record simply because it does not contain a medical source's opinion" and that Plaintiff failed to show "that any medical source opinions would vary from the evidence that was already in the administrative record."[21]

The ALJ has a well-established "affirmative obligation to develop the administrative record" because of the non-adversarial nature of the proceedings. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996); *see also Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015). Several courts in the Circuit have found that an ALJ "must make reasonable efforts to obtain a report prepared by a claimant's treating physician even when the treating physician's underlying records have been produced." *Paredes v. Comm'r of Soc. Sec.*, No. 16-CV-810, 2017 WL 2210865, at 17 (S.D.N.Y. May 19, 2017).

But an ALJ is under no obligation to seek out additional information "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history.'" *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 48). Thus, the Second Circuit has held that, where "the record contains sufficient evidence from which an ALJ can assess the claimant's residual functioning capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Commr.*

---

[20] ECF 19-1 at 22.

[21] ECF No. 21 at 10–12.

*of Soc. Sec.*, 676 Fed. App'x 5, 8 (2d Cir. 2017) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013)); *see also Swiantek,* 588 F. App'x at 84 ("Given the extensive medical record before the ALJ in this case, we hold that there were no 'obvious gaps' that necessitate remand solely on the ground that the ALJ failed to obtain a formal opinion from one of MLS's treating physicians."). Further, "the fact that the record does not contain any 'function-by-function opinions' from any of Plaintiff's treating sources addressing her mental or physical abilities does not create a gap in the record or render the record incomplete." *Sarah C. v. Comm'r. of Soc. Sec.*, No. 19-CV-1431, 2021 WL 1175072, at *10 (N.D.N.Y. Mar. 29, 2021)

Here, the Court has identified no obvious gap in the record. As such, the fact that the record does not contain function-by-function opinions from Plaintiff's treating sources does not render the record incomplete.  In making his decision, the ALJ had access to hundreds of pages of treatment records documenting Plaintiff's physical and mental impairments. These records span several years and include extensive records from Dr. Thompson, Dr. Pensa, and PA Mangino, including their progress notes, assessments, and laboratory results.[22] The record also includes the opinion of Dr. Joseph Guarnaccia, a consultative physician who examined Plaintiff.[23] And it includes the opinions of Dr. Glenn Gade and Dr. Mary Harkin—two state agency consultants who drafted opinions based on a review of Plaintiff's medical records.[24] Accordingly, the ALJ possessed a complete medical history and was not required to

---

[22] *See generally* R. 494–596.

[23] R. 639–642.

[24] R. 219–225 (Dr. Gade's opinion), R. 227–233 (Dr. Harkin's opinion).

9

affirmatively supplement this record with function-by-function opinions from Plaintiff's treating physicians.

Further, Plaintiff does not explain the significance or importance of function-by-function medical opinions from Dr. Thompson, Dr. Pensa, and PA Mangino. The Court is left to guess at what these medical professionals would have recommended. Based on their notes, the Court cannot conclude that opinions from these medical professionals would support Plaintiff's claim of disability. Thus, because Plaintiff has not adequately explained the significance of these missing opinions, the Court concludes that the ALJ did not commit legal error when he failed to obtain medical opinions from these physicians. *See Velazquez v. Berryhill*, No. 18-CV-1385 (SALM), 2019 WL 1915627, at *6 (D. Conn. Apr. 30, 2019) ("[P]laintiff has failed to articulate how a function-by-function assessment . . . would be 'significant.'"); *Wright v. Berryhill*, No. 16-CV-6156, 2017 WL 2720004, *4 (W.D.N.Y. June 23, 2017) ("[T]he Court believes that a remand for [the purpose of obtaining a report from a treating physician] would be an exercise in futility, since the medical notes give no indication that such a report would support Plaintiff's claim of disability.").

### C. The ALJ Properly Classified Plaintiff's Mental Health Conditions as Non-Severe

Next, Plaintiff contends that ALJ failed to provide "good reasons" for rejecting a treating physician's opinion when the ALJ determined that Plaintiff's anxiety and depressive disorders were not severe impairments.[25] The Court disagrees.

---

[25] ECF No. 19-1 at 31.

At Step Two, the ALJ determines the severity of a plaintiff's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is "an impairment that limits [a claimant's] ability to do physical or mental work-related activities." *Greek v. Colvin*, 802 F.3d 370, at 373 n.2 (2d Cir. 2015) (citing 20. C.F.R. §§ 404.1520(c), 404.1521). At this step, the claimant "bears the burden of presenting evidence establishing severity." *Baker v. Comm'r. of Soc. Sec.*, No. 15-CV-0787, 2016 WL 1446117, at *3 (N.D.N.Y. Mar. 22, 2016); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a). An impairment is "not severe" if it constitutes only a "slight abnormality" having a minimal effect on an individual's ability to perform basic work activities. *Id*. at *3.

Although Plaintiff frames this argument as "rejecting a treating physician's opinion," she does not cite *any* medical source who assessed that Plaintiff's mental conditions limited her ability to perform basic work activities.[26] Indeed, the Motion to Reverse makes only a single reference to medical records that document Plaintiff's mental health conditions.[27] That reference is not a treating physician's opinion on how Plaintiff's mental conditions impact her ability to work, rather, it is a brief record noting that Plaintiff has an anxiety disorder and a depressive disorder.[28] The record says nothing about the impact of these mental health condition's on Plaintiff's ability to perform basic work activities. Further, in Plaintiff's brief, she readily admits that that "the ALJ evaluated [Plaintiff's] mental impairments . . . without the benefit of the opinion of *any* clinician."[29] It is axiomatic that the Plaintiff cannot argue that

---

[26] *See generally* ECF No. 31–35.

[27] ECF No. 19-1 at 22 n.35.

[28] *Id*.; *see also* R. 519–20.

[29] ECF No. 19-1 at 22 (emphasis in original).

11

the ALJ failed to provide "good reasons" for rejecting a treating physician's opinion without first identifying the medical opinion in question.

Further, Plaintiff bears the burden of proving the severity of her condition. *See Woodmancy v. Colvin*, 577 Fed. App'x 72, 74 (2d Cir. 2014) ("A claimant has the burden of establishing that she has a 'severe impairment,' which is 'any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work.'") (quoting 20 C.F.R. § 416.20(c)). Here, Plaintiff did the exact opposite—she consistently denied that she experienced limitations due to depression and denied that she took any psychiatric medication.[30] Indeed, at the hearing, she expressly noted that she does not take any medicine for anxiety or depression.[31] And her depression screenings consistently resulted in a total score of zero, indicating that she did not self-report symptoms of depression to her treating physicians.[32] Accordingly, the Commissioner appropriately relied on Plaintiff's representations and the medical record to find that Plaintiff's mental impairments were non-severe because they only cause a "minimal limitation" in her ability to perform basic work activities.

In any event, if there was an error in the ALJ's analysis—which there is not—it would be harmless because the ALJ found other severe impairments and proceeded beyond Step Two. "[I]f the ALJ considers all impairments at subsequent stages of the analysis, failure to find a particular condition 'severe' at Step Two, even if erroneous, constitutes harmless error"

---

[30] R. 20, 858.

[31] R. 45.

[32] R. 650, 780, 858.

*Bridget C. v. Kijakazi*, No. 20-CV-1740 (SDV), 2022 WL 617605, at *7 (D. Conn. Feb. 5, 2022), *R&R adopted by*, No. 3:20-CV-1740 (SRU), 2022 WL 616734 (D. Conn. Mar. 2, 2022); *see also Reices-Colon v. Astrue*, 523 Fed. App'x 796, 798 (2d Cir. 2013) (holding that "any error" in miscategorizing anxiety and panic disorders was harmless because the ALJ "proceeded with the subsequent steps" and considered the impact of the anxiety disorder during the subsequent steps). Here, the ALJ found that Plaintiff's osteoarthritis and CTS of the left hand were severe impairments and proceeded beyond Step Two.[33] He then considered Plaintiff's mental impairments in the subsequent steps and when rendering his decision.[34] Accordingly, even if the ALJ had erred in his designation of Plaintiff's mental health claims as non-severe, such error would be harmless.

> D. **Plaintiff Retained the RFC to Perform Work That Exists in Significant Numbers in the National Economy**

Finally, Plaintiff argues that there is not substantial evidence to support the ALJ's RFC determination. Specifically, she asserts that the ALJ failed to sufficiently consider her upper extremity limitations when determining her RFC, and accordingly, the vocational expert ("VE") relied on an inaccurate RFC when testifying.[35] In response, the Commissioner contends that substantial evidence supports the ALJ's finding that Plaintiff has the RFC to perform light work with postural and manipulative limitations, and thus, the VE's testimony was substantial

---

[33] R. 19–20.

[34] R. 22 ("In making this finding, the [ALJ] has considered all symptoms and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence[.]").

[35] ECF No. 19-1 at 37–38.

evidence as to whether Plaintiff could perform work that exists in significant numbers in the national economy.[36] For the following reasons, the Court agrees with the Commissioner.

### 1. The ALJ Correctly Determined Plaintiff's RFC

As an initial matter, the ALJ's RCF determination is based on medical evidence in the record, even though it contravenes Plaintiff's testimony of her own perceived limitations. The RFC "is what the claimant can still do despite the limitations imposed by h[er] impairment." *Greek*, 802 F.3d at 374 n.2; *see also* 20 C.F.R. § 416.945(a)(1). The RFC is assessed "based on all the relevant evidence in [the] case record[,]" including "all of the relevant medical and other evidence." 20 C.F.R. §§ 416.945(a)(1), (3). The RFC, however, does not need to "perfectly correspond with any of the opinions of medical sources[.]" *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Further, when determining the RFC, the ALJ must take the claimant's "reports of pain and other limitations into account," but should "exercise discretion in weighing the credibility of claimant's testimony in light of other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Thus, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta*, 508 F. App'x at 56.

The ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 416.967(b).[37] However, he placed explicit limitations on this capacity, namely, that "she must not climb ladders, ropes or scaffolds" and that "she must avoid hazards such as heights, vibrations and dangerous machinery." He also placed specific limitations on her

---

[36] ECF No. 21 at 15; *see also* R. 22. (RFC determination).
[37] R. 22.

14

ability to use her left arm and hand, stating that "she can frequently reach overhead, handle and finger with her left non-master arm and hand."[38] He placed no limitations on her ability to use her right arm and hand. Light work, as defined in 20 C.F.R. 416.967, "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."

In the Motion to Reverse, Plaintiff contends that the ALJ failed to consider her upper extremity limitations when making the RFC determination. Specifically, she argues that the record is devoid of evidence that she can (1) lift to twenty pounds and frequently lift up to ten pounds; (2) reach overhead, handle, and finger with her left upper extremity; (3) use her right hand with no restrictions.[39] The Court disagrees.

First, the ALJ's determination of Plaintiff's capacity to lift twenty pounds and frequently lift up to ten pounds is supported by substantial evidence in the medical record, including medical opinions and treatment records. In making the determination, the ALJ relied on the opinions of state agency consultants—Dr. Gade and Dr. Harkin—who both found that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently.[40] He also relied on Plaintiff's medical records, which show "slightly reduced left upper extremity and grip strength" at some examination, but no indication of muscle atrophy or significant range of motion defects that would prevent Plaintiff from lifting such weight.[41] The only portion of the record the ALJ's determination is at odds with is Plaintiff's hearing testimony. At her

---

[38] *Id.*

[39] ECF No. 19-1 at 36–37.

[40] R. 25–26.

[41] *Id.*

15

hearing, she testified that she was unable to work because of hand pain, that she "could not lift more than two pounds."[42] Yet, after considering the record, the ALJ found that these claims were inconsistent with the medical evidence. *See Allen v. Astrue*, No. 05-CV-0101, 2008 WL 660510, at *12 (N.D.N.Y. Mar. 10, 2008) ("An ALJ is not required to accept a claimant's testimony without question."). He specifically found that Plaintiff's statements about the "intensity, persistence, and limiting effects" of her symptoms were inconsistent with the medical opinions and treatment notes.[43] This decision was warranted because, as outlined above, there is significant evidence in the record demonstrating Plaintiff's ability to lift more than two pounds.

Second, Plaintiff disagrees with the ALJ's decision to not further restrict her ability to use her upper left extremity.[44] The ALJ recognized that Plaintiff is limited in her ability to "perform postural, manipulative and reaching activities and be exposed to certain environmental conditions due to left upper extremity pain, tenderness and strength issues."[45] Thus, he limited her use of this extremity in her RFC determination, restricting her ability to only using her left upper extremity "frequently."[46] He also stated that "she must not climb ladders, ropes or scaffolds" and that "she must avoid hazards such as heights, vibrations and dangerous machinery" because of her upper left extremity pain and weakness.[47] Now, Plaintiff

---

[42] R. 42.

[43] R. 23.

[44] ECF No. 19-1 at 37.

[45] R. 25.

[46] *Id.*

[47] R. 22.

argues that these restrictions were not sufficient. The record does not support her argument. The ALJ found—and the Court agrees—that additional restrictions on Plaintiff's use of her upper left extremity are not warranted. Although Plaintiff had left wrist surgery, she recovered well and is able to make a fist and demonstrate normal ranges of motion.[48] She presented with tenderness and slightly reduced grip strength in some examinations,[49] but in other examinations she had "intact fine finger movements, good ranges of left upper extremity motion, and no ataxia."[50] Further, she has no muscle atrophy in her left upper extremity or significant range of motion defects.[51] Accordingly, additional limitations on Plaintiff's left upper extremity were not warranted.

      Third, Plaintiff challenges the ALJ's decision to not place any limitations on Plaintiff's use of her right upper extremity.[52] Once again, the ALJ's decision was supported by substantial evidence in the record. Plaintiff's right hand and wrist ailments resolved with injections.[53] Indeed, her medical records state that steroid injections to Plaintiff's right middle finger were "curative" for her right hand and wrist pain.[54] Further, although Plaintiff has reported right upper extremity pain, her adhesive capsulitis occurred in her *left* shoulder—not her right shoulder.[55] She required and received surgery, injections, and occupational therapy to address

---

[48] R. 25.

[49] *Id.*

[50] R. 27.

[51] R. 28.

[52] ECF No. 19-1 at 36–37.

[53] R. 27, 665, 680.

[54] R. 665, 680.

[55] R. 28.

pain in her *left* shoulder, not her right.[56] Accordingly, the ALJ properly found that the evidence in the record supports a finding that Plaintiff requires left upper extremity limitations, not right upper extremity limitations. And, as discussed above, the ALJ appropriately set limitations on Plaintiff's RFC as to her left upper extremity. Here, however, there is no indication that Plaintiff requires right upper extremity limitations in her RFC. Her right hand and wrist ailments have been resolved, and she does not require limitations for her right shoulder. Therefore, the ALJ's decision not to set limitations on Plaintiff's use of her right upper extremity is supported by substantial evidence in the record.

For the foregoing reasons, Plaintiff's challenges to the ALJ's RCF determination were unwarranted. The Commissioner's findings of fact must be upheld unless "a reasonable fact finder would *have to conclude otherwise.*" *Brault v. Soc. Sec. Admin., Comm'r.*, 683 F.3d 443, 448 (2d Cir. 2012) (cleaned up) (emphasis in original). There is no indication here that a reasonable fact finder must—or even should—conclude otherwise. And it is not the role of the Court to weigh evidence differently and find additional functional limitations. *See Spottswood v. Kijakazi,* No. 23-54-CV, 2024 WL 89635, at *2 (2d Cir. Jan. 9, 2024) ("[The Court is not] to reweigh evidence and must uphold a determination when evidence is susceptible to more than one rational interpretation."). Thus, the Court finds that the ALJ's RFC determination is supported by substantial evidence and must be upheld.

### 2. Vocational Expert testimony

Next, the Court turns to Plaintiff's argument that the VE's testimony was not substantial evidence of Plaintiff's ability to perform work that exists in significant numbers in the

---

[56] *Id.*

economy. Specifically, Plaintiff claims that the VE relied on an inaccurate hypothetical because the ALJ's RFC determination as inaccurate. However, as set forth above, the Court has already determined that the ALJ's RFC determination was proper, and additional limitations related to Plaintiff's shoulders and neck were not warranted. It therefore follows the ALJ's conclusion that Plaintiff can perform work in significant numbers in the national economy is supported by substantial evidence because it was based on the VE's testimony regarding a hypothetical individual with the same RFC as Plaintiff. *See, e.g.*, *Michelson v. Colvin*, No. 15-CV-0650, 2017 WL 4402455, at *12 (E.D.N.Y. Sept. 30, 2017) (affirming the ALJ's RFC determination, and as a result, finding that the VE's testimony regarding a hypothetical individual with the same RFC as the plaintiff was substantial evidence of that plaintiff's ability to perform work that in the national economy); *Jones v. Colvin*, No. 16-CV-0044, 2017 WL 3016839, at *12 (N.D.N.Y. July 14, 2017) (same); *Mojica v. Comm'r. of Soc. Sec.*, No. 13-CV-5631, 2014 WL 6480684, at *12 (S.D.N.Y. Nov. 17, 2014) (same). Accordingly, the VE's opinion is substantial evidence that supports the ALJ's determination that Plaintiff was not disabled.

## IV.    CONCLUSION

For these reasons, the Court **grants** the Commissioner's motion to affirm (ECF No. 21) and **denies** Plaintiff's motion to reverse (ECF No. 19). The Clerk of Court is directed to enter judgment in favor of the Commissioner and close the case.

**SO ORDERED.**

Hartford, Connecticut
March 10, 2026

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge